UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. O'BRIEN<br><br>Plaintiff<br><br>v.<br><br>R. PETER ANDERSON and the<br>TRIAL COURT OF<br>MASSACHUSETTS<br><br>Defendants. | C.A. No. 03-11356GAO |

## MEMORANDUM IN SUPPORT OF DEFENDANT R. PETER ANDERSON'S MOTION TO DISMISS AND FOR ENTRY OF FINAL JUDGMENT

By accompanying motion, Defendant R. Peter Anderson ("Judge Anderson") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice on judicial immunity grounds Count I (42 U.S.C. § 1983), Count II (M.G.L. c. 12, § 11I), Count III (false imprisonment), Count IV (negligent infliction of emotional distress), and Count V (intentional infliction of emotional distress) against him in the Complaint brought by Plaintiff John J. O'Brien. Further, because there is no just reason for delay, Judge Anderson also moves pursuant to Federal Rule of Civil Procedure 54(b) for entry of final judgment as to all claims O'Brien asserted against him.

### INTRODUCTION

John O'Brien ("O'Brien"), the Commissioner of Probation for the Commonwealth of Massachusetts, has brought claims against Judge Anderson, the First Justice of the Brighton Division of the Boston Municipal Court Department, under 42

U.S.C. § 1983 and M.G.L. c. 12, § 11I, and for false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress. O'Brien seeks monetary damages.

O'Brien's claims all arise from adjudicatory actions by Judge Anderson taken in his judicial capacity: namely, Judge Anderson held O'Brien in contempt of court for failing to comply with court orders concerning random drug testing of certain defendants. Judge Anderson is immune from suit (and civil liability) for adjudicatory actions taken in his judicial capacity. O'Brien, therefore, fails to state a claim on which relief can be granted, and this Court must dismiss these counts against him in the Complaint.

## I. ALLEGATIONS IN THE COMPLAINT[1]

The only factual allegations in the Complaint relevant to the question of whether Judge Anderson has absolute judicial immunity for O'Brien's claims against him are the following:

Judge Anderson entered orders in four criminal cases before him that required the criminal defendants to undergo random drug testing by a certain method at the Office of Community Corrections, and ordered the Office of Community Corrections to conduct that random drug testing. See Complaint ¶ 9. O'Brien failed to comply with Judge Anderson's orders in the four criminal cases, and Judge Anderson held O'Brien in civil contempt for his failure to comply with those orders. See, e.g., Complaint ¶¶ 13, 20-22, 24, 29, 33, 36. As a result of Judge Anderson's contempt order, O'Brien was taken into

---

[1] Judge Anderson accepts the allegations in O'Brien's Complaint as true only for the purposes of this motion to dismiss, as he must on a motion to dismiss.

custody, placed in the criminal dock and then incarcerated in a holding cell. See Complaint ¶ 37.

O'Brien's allegations that he was taken into custody, placed in the criminal dock, and subsequently incarcerated in a holding cell constitute the basis for each of his claims against Judge Anderson. For example, O'Brien alleges in Counts I and II that Judge Anderson, acting under color of state law, deprived him of his liberty by holding him in civil contempt and causing him to be incarcerated and thus interfered with O'Brien's rights under the laws and constitution of the United States and the Commonwealth by threats, intimidation and coercion. See Complaint ¶¶ 40-49. Similarly, O'Brien alleges in Count III that Judge Anderson's order holding him in civil contempt and causing him to be incarcerated was an unlawful restraint that deprived O'Brien of his personal liberty and that caused him to be falsely imprisoned in a holding cell. See Complaint ¶¶ 50-53. Finally, in Counts IV and V, O'Brien alleges that Judge Anderson negligently and intentionally inflicted emotional distress on him by causing him to be incarcerated. See Complaint ¶¶ 54-61.

The Complaint contains a multitude of additional allegations describing the context and circumstances surrounding Judge Anderson's orders and O'Brien's failure to comply with those orders. These additional allegations, however, have no impact whatsoever on whether Judge Anderson's conduct in holding O'Brien in civil contempt is shielded by absolute immunity.

## II. MOTION TO DISMISS STANDARD

A claim must be dismissed under Rule 12(b)(6) if it is shown beyond doubt that no provable set of facts would entitle the plaintiff to relief. See Nader v. Citron, 372

Mass. 96, 98 (1977). Immunity from suit, therefore, is a proper basis for dismissal under Rule 12(b)(6). See, e.g., Cuddy v. Kueker, 7 Mass. App. Ct. 896, 897 (1979). A court evaluating a motion to dismiss must accept all allegations in the complaint as true, and must make all reasonable inferences from those allegations in favor of the plaintiff. Fairneny v. Savogran Co., 422 Mass. 479, 480 (1996). The court, however, need not accept as true legal conclusions cast in the form of factual allegations. Schraer v. Brandeis University, 432 Mass 474, 477 (2000).

### III. ABSOLUTE IMMUNITY SHIELDS JUDGE ANDERSON FROM SUIT

Both Federal and Massachusetts courts have long recognized absolute immunity for judges in suits involving monetary damages. See, e.g., Stump v. Sparkman, 435 U.S. 349, 355-356 (1978); Joyce v. Hickey, 337 Mass. 118, 121 (1958). This absolute immunity extends to claims arising under civil rights statutes as well as common law tort claims. See, e.g., Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Chicopee Lions Club v. District Attorney for the Hampden District, 396 Mass. 244, 251 (1985) (noting that absolute immunity for judges and prosecutors extends to common law torts and claims under the Massachusetts Civil Rights Act). Further, absolute immunity is immunity from *suit*, not just from damages. See, e.g., Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). Although the application of absolute immunity may sometimes result in injustice to a litigant, it is critical to the proper administration of justice that judges exercising the authority vested in them are free to act on their own convictions without fear of personal reprisal in the form of a civil lawsuit. See, e.g., Mireles, 502 U.S. at 9; Commonwealth v. O'Neil, 418 Mass. 760, 764 (1994).

A judge is entitled to absolute judicial immunity if "at the time he took the challenged action he had jurisdiction over the subject matter before him." Stump, 435 U.S. at 356; see also Temple v. Marlborough Division of the District Court Department, 395 Mass. 117, 132 (1985). In the immunity context, a judge's subject matter jurisdiction is broadly construed: as long as the judge has the authority to perform the type of act complained of – here, to hold an individual in contempt of court for failure to comply with court orders – he acts within his jurisdiction for immunity purposes. See Stump, 435 U.S. at 356-57; Mireles v. Waco, 502 U.S. 9, 13 (1991) (per curiam) (noting that in determining judicial immunity, the Court looks not at the particular act, but to the particular act's relation to a general function normally performed by the judge). A judge does not lose immunity because his actions are erroneous, malicious, in excess of his authority, or disregardful of elementary principles of procedural due process, as long as the judge had jurisdiction over the subject matter before him. See Stump, 435 U.S. at 356. Nor does a judge lose immunity because he does not have personal jurisdiction over the individual before him, Cintron v. Pagan Nieves, 736 F. Supp. 411, 413 n.1 (D.P.R. 1990).

O'Brien does not allege (nor could he allege) that civil contempt power is not within the subject matter jurisdiction of Judge Anderson, a District Court judge. Indeed, it is well-established that "[e]very court of superior jurisdiction has the inherent power to compel obedience to its decrees and to punish those who obstruct or degrade the administration of justice. For these purposes, District Courts are "Courts of Superior and General jurisdiction," New England Novelty Co. v. Sandberg, 315 Mass. 739, 746 (1944); M.G.L.c. 218, § 4. Thus, contempt proceedings against O'Brien were well within

Judge Anderson's subject matter jurisdiction. As the case law cited above makes clear, Judge Anderson is absolutely immune from suit for claims challenging actions taken within his subject matter jurisdiction.

Cintron v. Pagan Nieves is factually similar to the case before this Court, and, therefore, is instructive on the judicial immunity issue. In Cintron, Teresa Cintron learned that the Guaynabo District Court in Puerto Rico had ordered her son arrested for civil contempt for failure to pay child support. 736 F. Supp. at 411. She also learned that the Court had scheduled a hearing on the case. See id. Shortly thereafter, her son sent her $1000 for partial payment of his back child support. See id. at 411-12. Mrs. Cintron went to the court building to deliver the money she had received from her son. See id. at 412. After speaking with Judge DeLeon's secretary, Mrs. Cintron was advised that the judge had authorized the acceptance of the $1000 in partial payment of her son's child support obligations. See id. She then delivered the money to the clerk's office. See id. Meanwhile, Judge DeLeon had entered a hand-written order on the file of the case noting the payment and calling for Mrs. Cintron to appear in court the following morning with her son's address. Mrs. Cintron, however, alleged that she was never informed of this order, or of the need to produce her son's address, but that she was merely told by the judge's secretary to appear in court the next day. See id. Mrs. Cintron appeared in the courtroom presided over by Judge Joyce Pagan-Nieves. See id. At some point, the judge asked Mrs. Cintron to approach the bench and requested her to turn over her son's address. See id. When Mrs. Cintron replied that she did not know the address, the judge held that she had violated Judge DeLeon's order from the previous day; Mrs. Cintron was found in contempt and given a ten-day prison sentence that was soon amended to thirty

days. See id. She was arrested, processed, and taken to prison. See id. Judge DeLeon vacated the contempt decree three days later. See id.

Mrs. Cintron sued Judge Pagan-Nieves under § 1983. See id. at 411. In response to the Judge's motion to dismiss on the grounds of judicial immunity, she alleged that her son's case was not officially docketed on the day the contempt decree entered, and that she was not properly notified, served and brought before the District Court concerning the issue of her son's address. See id. at 413. Mrs. Cintron, however, did not allege in her Complaint that Judge Pagan-Nieves, a judge in a court of general jurisdiction, was not empowered to punish for contempt. See id. Because Judge Pagan-Nieves was empowered to punish for contempt, judicial immunity cloaked her action of issuing a contempt decree, even if she did not "comport with procedural niceties . . . ." Id.

Like Judge Pagan-Nieves, Judge Anderson, as a judge in a court of general and superior jurisdiction, was empowered to punish for contempt for failure to obey his orders. His decision to punish for contempt, therefore, is cloaked in absolute judicial immunity. Because all of O'Brien's claims arise from Judge Anderson holding him in contempt at the April 25 hearing, and Judge Anderson's decision to hold him in contempt is cloaked in absolute judicial immunity, all of O'Brien's claims against Judge Anderson must be dismissed for failure to state a claim.

WHEREFORE, Judge Anderson requests that this Court dismiss with prejudice all counts against him (namely, Counts I, II, II, IV, and V) in O'Brien's Complaint and pursuant to Fed. R. Civ. P. 54(d) enter final judgment in his favor.

/s/ Richard W. Renehan
Richard W. Renehan (BBO# 416680)
Special Assistant Attorney General
Goulston & Storrs, PC
400 Atlantic Avenue
Boston, MA 02110
(617) 482-1776

Dated: August 10, 2004

**CERTIFICATION OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 8/10/04
/s/ Richard W. Renehan

-8-