UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN J. O'BRIEN,          )<br>                          )<br>      Plaintiff          )<br>                          )<br>v.                        )<br>                          )<br>R. PETER ANDERSON and the TRIAL )<br>COURT OF MASSACHUSETTS,  )<br>                          )<br>      Defendants         )<br>                          ) | Civil Action No. 04-11356GAO |

MEMORANDUM OF PLAINTIFF IN OPPOSITION TO
DEFENDANT R. PETER ANDERSON'S MOTION TO
DISMISS AND FOR ENTRY OF FINAL JUDGMENT

INTRODUCTION

A review of the facts contained in the Complaint surrounding Plaintiff's incarceration reveal that Defendant Anderson misused his authority in the form of contempt powers to effectuate administrative decisions (non-judicial acts) involving legislative funding over which he has no legal authority (lack of subject matter jurisdiction).

Plaintiff, as Commissioner of Probation, i.e., an employee of the Trial Court, was summoned into Brighton District Court by Defendant Anderson to show cause why he should not be held in contempt of Defendant Anderson's sentencing order regarding the drug testing of a criminal defendant.  See Complaint Exhibits D, E, G, N, Q.  Plaintiff certainly was not a party to the underlying criminal matter, nor has he any involvement other than as an employee of the Trial Court.  The adjudication of the underlying criminal matter was complete as evidenced by Defendant's sentencing order.  The show cause hearings against Plaintiff, at which neither the criminal defendant nor counsel were

present, had nothing to do with the adjudication of the guilt or innocence of the criminal defendant. The issue involved in the contempt proceeding against the Plaintiff unequivocally involved the administration of drug testing (and the funding thereof) as set forth in the sentencing order. Complaint, Exhibit D. The type of testing, the frequency, and who would perform the testing, all administrative matters, hinged on the appropriation of legislatively granted funds (outside the jurisdiction of a district court judge) for these services in Suffolk County. Plaintiff's representatives reported to Defendant Anderson at several show cause hearings that the funds appropriated to Suffolk County for drug testing had been exhausted. In fact, Defendant Anderson knew that the type of drug testing he desired was no longer available due to the exhaustion of the funds appropriated by the legislature. After rejecting proposed alternatives to these issues, Defendant Anderson found Plaintiff in civil contempt and had him incarcerated.

I.     ALLEGATIONS IN THE COMPLAINT

Defendant Anderson was aware from the Chief Justice for Administration and Management (hereinafter "CJAM"), Dortch-Okara, that reductions in funding required cost-saving measures, including the drug testing of criminal defendants. See Complaint ¶¶ 5, 6. Defendant Anderson was aware that he needed prior approval before utilizing a funding source outside his own Court's appropriation for operational expenses. See Complaint ¶ 8. At an administrative meeting to discuss drug testing needs versus fiscal constraints, held prior to the initiation of the contempt, Judge Anderson threatened to hold Plaintiff in contempt after proposed administrative resolutions were not satisfactory to him. Complaint ¶ 10.

The CJAM, Dortch-Okara, clearly identified the issues as administrative - "the issue of how and when the resources of one part of the Trial Court may be accessed by

other parts of the Trial Court is one that must be resolved by the CJAM pursuant to her power of general superintendence of the administration of the Trial Court, pursuant to G.L. c. 211B, § 9."  See Complaint ¶ 17.

At each show cause hearing held before Defendant Anderson, he was informed that fiscal constraints caused by reduced funding were at issue and Plaintiff urged that an administrative resolution was appropriate.  Complaint ¶¶ 13, 29, 333 and 35.  Defendant Anderson was aware that the type of testing upon which he had insisted, batch-analyzation, was no longer available to the Office of Community Corrections because the contract between the private vendor Willow Street, and the Suffolk County Sheriff's Office had terminated as a result of the exhaustion of appropriated funding.  See Complaint ¶¶ 20, 21 and 22.

Thereafter, the Defendant Trial Court filed a motion before Defendant Anderson in the underlying criminal matters for leave to appear and seek a stay of the contempt proceedings "to allow the Drug Court Working Group to administratively address the current issue and to develop an appropriate solution."  See Complaint ¶ 28.

Simply put, each and every individual, including Defendant Anderson, involved in the events described in the Complaint knew that the issues of the funding for and availability of free drug testing for indigent criminal defendants was an administrative matter subject to legislative appropriation.

II.   MOTION TO DISMISS STANDARD

   Plaintiff agrees with the standard set forth in Defendant Anderson's supporting Memorandum pertaining to Motions to Dismiss.

III.   THE DOCTRINE OF JUDICIAL IMMUNITY DOES NOT SHIELD
       DEFENDANT ANDERSON FROM SUIT

Although Defendant Anderson is correct in the assertion in his supporting memorandum that both Federal and Massachusetts Courts have long recognized judicial immunity for judges in suits involving monetary damages, this immunity is by no means absolute. Each of the cases cited by Defendant Anderson in support of judicial immunity involved <u>judicial acts</u> which pertained to the adjudication of issues over which the judges had <u>subject matter jurisdiction</u> and which involved claimants who had some direct connection to the matter before the Court. Moreover, Defendant Anderson fails to apply the two prong functional approach in analyzing the application of judicial immunity as adopted by the United States Supreme Court. See, e.g., <u>Forester</u> v. <u>White</u>, 484 U.S. 219 (1988), and <u>Mireles</u> v. <u>Waco</u>, 502 U.S. 9 (1991).

Conspicuously absent from Defendants memorandum is a discussion of cases finding that Judges were not entitled to immunity. In particular, the Supreme Court, in <u>Forester,</u> provides an informative history of the development of the legal principle of judicial immunity. Originated in medieval times, judicial immunity was a device to discourage collateral attacks on perceived erroneous decisions and avoid vexatious actions by disgruntled litigants. <u>Bradley</u> v. <u>Fisher</u>, 13 Wall. 335, at 348 (1872). The reasoning of the Bradley Court was that, if parties to litigation were allowed to sue the judiciary for perceived errors in the adjudication of their disputes, the ability of Judges to render impartial decisions would be hindered by trepidations over personal liability from vexatious actions by dissatisfied claimants.

The Supreme Court, in <u>Forrester</u>, states:

"When applied to the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court, the doctrine of absolute judicial immunity has not been particularly controversial. Difficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other

contexts, immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches. This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." Forrester v. White, 484 U.S., at 227.

The Court further concludes that "administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." Id., at 228. The Court in Forrester reiterates that the immunity analysis focuses on the nature of the function performed, not the identity of the character who performed it, i.e., a judge. Applying this functional analysis to the present case, the potential danger of vexatious actions by disgruntled state officials who have been found in civil contempt and incarcerated because of lack of appropriated funding for drug testing indigent criminal defendants, is non-existent. In the present case, the state official, the Plaintiff, was not a party to any dispute wherein he invoked the jurisdiction of the Court. Rather, Defendant Anderson initiated the proceedings himself.

In Forrester, an employee filed a sex discrimination action against her employer, a state court judge, who hired, demoted, and fired the employee from her position as a probation officer. The employee alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and § 1 of the Civil Rights Act of 1871, 42 U.S.C.S. § 1983. Under Ill. Rev. Stat. Ch. 38, para. 204-1 (1979), the Judge had authority to hire probation officers, who were removable at his discretion. A jury found that the Judge discriminated against the employee on account of her sex and awarded damages. The district court granted the Judge's motion for a new trial. The district court then granted the Judge's motion for summary judgment on the ground of absolute judicial immunity. The appellate court affirmed. The U.S. Supreme Court granted certiorari and reversed

and remanded. The Court concluded that the employer's decisions were not judicial acts for which he was absolutely immune from liability because he was acting in an administrative, as opposed to a judicial, capacity.

The Court found that the state court judge was acting in an administrative capacity when he demoted and discharged the probation officer. "Those acts – like many others involved in supervising court employees and overseeing the efficient operation of a court – may have been quite important in providing the necessary conditions of a sound adjudicative system. The decisions at issue, however, were not themselves judicial or adjudicative." Id., at 229.

Absolute immunity is "strong medicine, justified only when the danger of officials being deflected from the effective performance of their duties is very great." Forrester v. White, 792 F. 2d, at 660 (Posner, J., dissenting below). The Court in Forrester found the danger, as in the present case, was not great enough. "To conclude that, because a judge acts within the scope of his authority, such employment decisions are brought within the court's 'jurisdiction', or converted into 'judicial acts', would lift form above substance." Forrester v. White, 484 U.S., at 230. The Court concluded that the state court judge was not entitled to absolute immunity for his decisions to demote and discharge the probation officer. Id., at 230. Similarly, for Defendant Anderson to suggest that, simply because he has inherent contempt powers, incarcerating Plaintiff to resolve an administrative dispute was a judicial act, is "lift(ing) form above substance."

The Forrester case sets forth the first prong of the two-prong functional test employed by the Court to determine whether the action taken by a judge is a judicial act, i.e., whether the function is one "normally performed by a judge." Stump v. Sparkman, 435 U.S. 349, at 362. Clearly, the premeditated initiation, sua sponte, of a civil contempt

against the Commissioner of Probation in a district court criminal drug case is not itself a paradigmatic judicial act, i.e., an act which occurs in the context of resolving disputes between two parties.  Forrester v. White, 484 U.S., at 227.

In holding that the defendant judge's involvement in initiating both criminal prosecution and civil contempt proceeding against a father for non-payment of child support would constitute non-judicial acts exposing the judge to liability for resulting damages, the Court of Appeals for the Sixth Circuit stated:

> "The test to be applied is whether initiating accusatory processes such as criminal prosecutions or civil contempt proceedings is a function normally performed by a judicial officer. *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107. We conclude that it is not. *Cf. In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (judge initiates prosecution by acting as one-man grand jury)" Sevier v. Turner, 742 F. 2d. 262, at 272 (1984).
> The court found that the Judge had "in effect, undertook prosecutional duties that constituted non-judicial acts." Id., at 272.

In the Sevier case, the defendant judge initiated criminal prosecution and civil contempt proceeding against father for non-support, eventually incarcerating the plaintiff.  The Court ruled that judicial immunity was not available to the defendant judge in a § 1983 damages claim.

In the present case, Defendant Anderson initiated the contempt proceedings on his own initiative, presented evidence and testimony in support of his position, compelled the Plaintiff to appear personally to explain and justify his administrative decisions, and ultimately resolved all legal and factual issues against the Plaintiff.  There simply is no precedent for Defendant Anderson's novel use of district court contempt powers against a nonparty like the Plaintiff, whose only involvement is as an employee of the Trial Court.

The Court of Appeals for the Fifth Circuit has held "that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further

appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts." These non-judicial acts, to state the obvious, are not cloaked with judicial immunity from suit under s. 1983." Harper v. Merckle, 638 F.2d 848, at 859. (1981).

Since Defendant Anderson used his judicial office as an offensive weapon (civil contempt proceeding) to vindicate personal objectives (obtain funding for drug testing for his Drug Court session), and neither Plaintiff nor any party to the underlying criminal matter "invoked the judicial machinery for any purpose at all", then Defendant Anderson's actions do not "amount to judicial acts". These non-judicial acts, "to state the obvious, are not cloaked with judicial immunity from suit under §1983." Id., at 859.

The second prong of the functional approach employed by the Supreme Court is whether the judge acted in the absence of all jurisdiction. See, e.g., Mireles v. Waco, 502 U.S. 9 (1991). Although Defendant Anderson had subject matter jurisdiction over the criminal matter pending before him, that matter had reached final adjudication. Defendant Anderson lacked subject matter jurisdiction over the issues he raised in the civil contempt proceeding he initiated against Plaintiff. None of the matters delved into by Defendant Anderson in the contempt proceeding involved the adjudication of the criminal defendant's guilt or innocence. Rather, the contempt proceeding became an inquisition into everything administrative about drug-testing: where, how, and by whom funding for the drug testing would be obtained for Suffolk County, given the exhaustion of the appropriation by the legislature. Defendant Anderson utilized his contempt powers to effectively re-allocate funding appropriated by the Legislature, a subject matter over which he lacks all jurisdiction. In fact, the Legislature, by statute, has mandated that the CJAM has the exclusive authority to allocate resources among the departments of the

Trial Court, G.L. c. 211B § 9(xxiii)(a).

Moreover, the Legislature, in establishing the Office of Community Corrections ("OCC") within the Office of the Commissioner of Probation, expressly made it "subject to appropriation". G.L. c. 211F, § 2(a). Therefore, the functioning of programs within the OCC is conditional on funding appropriated by the Legislature.

Furthermore, the Commissioner of Probation "shall have executive control and supervision of the probation service." G.L. c. 276, § 98. In fact, subject only "to the approval of the CJAM, the Commissioner shall establish … standards and rules of probation work, including methods and procedures of investigation, mediation, supervision …" G.L. c. 276, § 99. Plaintiff is cloaked with executive branch duties by the Legislature and is unable to re-allocate funds earmarked for contract services (such as drug testing) at the OCC, even at the threat of contempt. His office has the difficult task of providing services throughout the entire Commonwealth within an appropriated budget. Nowhere in this statutory scheme of funding the OCC for programs such as drug testing does the Legislature grant a district court judge any semblance of subject matter jurisdiction over funding issues. Quite to the contrary, the Legislature has bestowed this responsibility on the CJAM and made the establishment of the OCC, and its programs, "subject to appropriation," which is a legislative function.

IV.   CONCLUSION

Employing the two-prong functional approach utilized by the Supreme Court, Defendant Anderson may not avail himself of the protection of judicial immunity.

Defendant Anderson's incarceration of Plaintiff was clearly not a judicial act but rather an unequivocally administrative one not having any relevancy to the adjudication of the underlying criminal matter before him.

Moreover, Defendant Anderson, in his capacity as a district court judge, lacks all subject matter jurisdiction over funding approved by the legislative and allocated by trial court personnel, all according to statute.

In sum, Defendant Anderson is without jurisdiction to order public officials to provide free services to criminal defendants where funding is unavailable or has been exhausted.  Thus, it naturally follows that Defendant Anderson is without jurisdiction to incarcerate those same public officials for failure to provide those services where funding is non-existent.

WHEREFORE, Plaintiff O'Brien requests that this Court deny Defendant Anderson's Motion to Dismiss all counts against him.

<div style="margin-left:50%">
Respectfully submitted,

JOHN J. O'BRIEN,

By his attorney,

<u>Paul K. Flavin            /s/</u>
Paul K. Flavin, Esquire
BBO# 171145
John C. Koslowsky, Esquire
BBO# 561616
Flavin and Koslowsky
424 Adams Street
Milton, MA  02186
(617) 698-3000
</div>

Dated:   September 17, 2004

<center>CERTIFICATE OF SERVICE</center>

I, Paul K. Flavin, Esquire, hereby certify that on this 17th day of September, 2004, I have caused to be served by First Class Mail, postage prepaid, the

Foregoing pleading upon Richard Renehan, Esquire, Goulston and Storrs, P.C., 400 Atlantic Avenue, Boston, MA 02110 and J. Owen Todd, Esquire, Todd and Weld LLP, 28 State Street, Boston, MA 02109.

<u>Paul K. Flavin      /s/</u>
Paul K. Flavin      /s/

2003-46C