UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN J. O'BRIEN,           ) <br> ) <br> Plaintiff          ) <br> ) <br> v.                         ) <br> ) <br> R. PETER ANDERSON and the TRIAL ) <br> COURT OF MASSACHUSETTS,    ) <br> ) <br> Defendants         ) <br> ) | Civil Action No. 04-11356GAO |

MEMORANDUM OF PLAINTIFF IN OPPOSITION TO
DEFENDANT TRIAL COURT OF MASSACHUSETTS' MOTION TO
DISMISS AND FOR ENTRY OF FINAL JUDGMENT

INTRODUCTION

The Plaintiff, John J. O'Brien, respectfully submits this memorandum in opposition to Defendant Trial Court of Massachusetts' Motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

As grounds for his Opposition, the Plaintiff states that the Defendant Trial Court (i) owed the Plaintiff a duty; it breached that duty; and the breach of that duty was the proximate cause of harm to the Plaintiff when he was incarcerated for allegedly failing to comply with a court order; (ii) the Defendant Trial Court (via the Massachusetts Chief Justice for Administration and Management "CJAM") did in fact have authority to administratively resolve the drug-testing (and the funding thereof) issues which Defendant Anderson raised in the contempt proceeding against the Plaintiff for allegedly failing to comply with a court order; and (iii) the conduct of the Defendant Trial Court was in fact negligent in that once the CJAM exercised her statutory authority over the

dispute, she had a duty to perform it in a non-negligent manner.

## FACTUAL BACKGROUND

In the Fiscal Year 2002 Memo, which was issued by the CJAM in November 2001, the Defendant Trial Court informed Defendant Anderson and the Plaintiff of the necessity of budget cuts, which would include drug testing of criminal defendants. See Complaint Exhibit A.

In an effort to comply with the directive in the CJAM's memo, the Plaintiff's office issued a memo that modified the policy dealing with the frequency and duration of drug testing at Community Corrections Centers. See Complaint Exhibit B.

Shortly thereafter, in January 2002, the CJAM issued the Defendant Trial Court Policy for Drug Court Sessions that provided, in part, that the drug court sessions must obtain prior approval before utilizing a funding source outside that particular court's appropriation for operational expenses. See Complaint Exhibit C.

Aware that the Defendant Trial Court and the Office of the Plaintiff had issued these memos and policies, Defendant Anderson deliberately issued court orders involving four criminal defendants that intentionally deviated from the procedures and policies established by the Defendant Trial Court and the Office of the Plaintiff. See Complaint Exhibit D.

An administrative meeting was held in January 2002, during which the parties discussed the budgetary restraints that had been placed on the Office of Community Corrections ("OCC") when it came to drug testing criminal defendants. Defendant Anderson was made aware of the fiscal reality that the drug tests could not continue to be performed as he had ordered, yet he rejected all alternatives as to how the problem could be rectified.

In March of 2002, Defendant Anderson issued a Notice of Hearing ordering the Plaintiff to appear and show cause as to why he should not be held in civil contempt for failing to comply with his court orders regarding drug testing. See Complaint Exhibit E. The Office of the Plaintiff immediately notified the CJAM of the Hearing and requested an administrative resolution to the issue. See Complaint Exhibits F, H, I. The CJAM directed the Plaintiff to submit any particular issues between a Trial Court Judge and the Office of the Commissioner of Probation concerning drug-testing services to her for administrative resolution. See Complaint Exhibit J.

In issuing this directive to the Commissioner of Probation, the CJAM undertook the duty of implementing the policy and procedure that had been established within the Trial Court regarding drug testing, including when and how one part of the Trial Court may access resources of another part. Once this duty was established, she had an obligation to act in a reasonable manner to effectuate an administrative resolution.

I. ALLEGATIONS IN THE COMPLAINT

Defendant Anderson was aware from the CJAM, Dortch-Okara, that reductions in funding required cost-saving measures, including the drug testing of criminal defendants. See Complaint ¶¶ 5, 6. Defendant Anderson was aware that he needed prior approval before utilizing a funding source outside his own Court's appropriation for operational expenses. See Complaint ¶ 8. At an administrative meeting to discuss drug-testing needs versus fiscal constraints, held prior to the initiation of the contempt, Judge Anderson threatened to hold Plaintiff in contempt after several proposed administrative resolutions were not satisfactory to him. Complaint ¶ 10.

The CJAM, Dortch-Okara, clearly identified the issues as administrative - "the issue of how and when the resources of one part of the Trial Court may be accessed by

other parts of the Trial Court is one that must be resolved by the CJAM pursuant to her power of general superintendence of the administration of the Trial Court, pursuant to G.L. c. 211B, § 9." See Complaint ¶ 17.

At each show cause hearing held before Defendant Anderson, he was informed that fiscal constraints caused by reduced funding were at issue and Plaintiff urged that an administrative resolution was appropriate. Complaint ¶¶ 13, 29, 333 and 35. Defendant Anderson was aware that the type of testing upon which he had insisted, batch-analyzation, was no longer available to the Office of Community Corrections because the contract between the private vendor Willow Street, and the Suffolk County Sheriff's Office had terminated as a result of the exhaustion of appropriated funding. See Complaint ¶¶ 20, 21 and 22.

Thereafter, the Defendant Trial Court filed a motion before Defendant Anderson in the underlying criminal matters for leave to appear and seek a stay of the contempt proceedings "to allow the Drug Court Working Group to administratively address the current issue and to develop an appropriate solution." See Complaint ¶ 28.

Simply put, each and every individual, including Judge Anderson, involved in the events described in the Complaint knew that the issues of the funding for and availability of free drug testing for indigent criminal defendants was an administrative matter subject to legislative appropriation.

II. MOTION TO DISMISS STANDARD

Plaintiff agrees with the standard set forth in Defendant Anderson's supporting Memorandum pertaining to Motions to Dismiss.

### III. THE PLAINTIFF'S CLAIM OF NEGLIGENCE AGAINST THE DEFENDANT TRIAL COURT CAN BE ESTABLISHED

In a civil action based on a claim for negligence, the plaintiff must allege and prove facts indicating that the defendant owed some duty to him, that the duty was breached and that the breach caused harm to the plaintiff. See Kent v. Commonwealth, 437 Mass. 312 (2002). "When a party binds himself (by contract) to do a work or perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it." See Herbert A. Sullivan, Inc. v. Utica Mutual Insurance Company, 439 Mass. 387 (2003).

At this stage, Defendant Trial Court does not argue that the CJAM's failure to act was not negligent, but merely argues that the CJAM's failure to act in accordance with G.L. c. 211B, § 9 was discretionary.

M.G.L.A. c. 211D § 9, provides in relevant part that, 'the Office of the Chief Administrative Justice *shall* supervise, establish standards for and monitor…other appropriate operations of the trial court"(emphasis added). The decision as to whether to act in this instance is not discretionary, the CJAM must act by statute. She acknowledged this in her directive to Plaintiff to submit such issues to her for administrative resolution pursuant to her statutory power.

The CJAM, as employee of the Defendant Trial Court, had a duty under the statute to act administratively and address the financial constraints placed on the OCC by the budgetary cuts. The policy of employing mandatory drug testing for criminal defendants had been well established, as had procedures within the Trial Court to administer these drug tests. The OCC was not refusing to comply with Defendant Anderson's order to test. However, due to the fiscal constraints placed on the OCC by

limited appropriations to the Trial Court itself, the manner and frequency of testing being ordered was not economically feasible, and, eventually, unavailable.  It was the subsequent unavailability of the ordered testing that resulted in the incarceration of Plaintiff.

As the "supervisor" of "operations of the trial court," it was the duty of the CJAM to resolve this administrative matter in order to prevent the Plaintiff's wrongful incarceration, which she knew or should have known, would result from her failure to intervene.

In addition to the statutory mandate, the CJAM also established a duty when she directed the Plaintiff to forward any particular issues between a Trial Court Judge and the Office of the Commissioner of Probation concerning drug-testing services to her for administrative resolution.  See Complaint Exhibit J.  Once she established the duty, she had an obligation to use reasonable care in resolving the matter administratively.

The Trial Court breached its duty when the CJAM failed to address the situation the OCC had been unavoidably placed in as a result of the lack of appropriated funds, particularly after she had exercised her authority and ordered Trial Court personnel to submit the issue to her.  If the Judges of the Trial Court are going to order certain types of (drug) testing, it is the responsibility of the Trial Court to make the necessary funds and/or the means of testing available to the OCC and/or the Office of Probation.  It is the statutory responsibility of the CJAM to establish standards for and monitor the operations of the trial court as well as implement those standards in a non-negligent manner. Her failure to do so resulted in the Trial Court's breach of duty owed to the Plaintiff, and directly led to his eventual incarceration, as previously threatened by Defendant Anderson.

Eventually, the Trial Court's breach of its duty (via the Office of the CJAM) in failing to act, coupled with the exhaustion of funds for drug testing by the OCC as required by Defendant Anderson, was the proximate cause of the harm to the Plaintiff, as he was held personally responsible and incarcerated for his "failure" to comply with a court order.

Therefore, it was the duty of the Trial Court/CJAM to resolve this administrative matter and prevent the illegal incarceration of the Commissioner of Probation. The Trial Court breached its duty and the Plaintiff was harmed as a direct result.

IV. THE PLAINTIFF'S NEGLIGENCE CLAIM AGAINST THE TRIAL COURT IS NOT BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION

The Trial Court is not entitled to immunity from liability by application of the discretionary function exception to governmental tort liability. G.L.c. 258 § 10(b).

The Defendant Trial Court states correctly that the authority of the CJAM is defined by the Legislature under G.L. c. 211B §9, which states, in relevant part, that "the chief justice for administration and management…**shall** have general superintendence of the administration of the trial court…**shall** be the administrative head of the trial court of the Commonwealth…**shall** be responsible for the management of court personnel, facilities, administration, security, and court business and **shall** have the authority to carry out these responsibilities…[including] the responsibility to provide planning and policy making functions, including **implementation** of such planning and policy making decisions" (emphasis added). Based on the grant of this authority, the CJAM had a statutory mandate to administratively resolve "the issue of how and when the resources

of one part of the Trial Court may be accessed by other parts of the Trial Court". See Complaint Exhibit J. In her directive to Plaintiff, the CJAM herself unequivocally recognized her duty for administrative action in a dispute regarding Trial Court personnel and the providing of free services to criminal defendants in a time of immense fiscal constraint. In fact, the Legislature, by statute, had mandated that the CJAM has the exclusive authority to allocate resources among the departments of the Trial Court. G.L. c. 211B § 9(xxiii)(a).

When deciding whether the act of a public employee falls under the cloak of discretionary function, the court has applied a four-pronged test: "Was the injury producing conduct an integral part of government policymaking and planning? Might the imposition of tort liability jeopardize the quality and efficiency of the governmental process? Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches? Is there an alternative remedy available to the injured individual other than an action for damages? See Dobos v. Driscoll, 404 Mass 634, 651 (1989).

In Dobos, a jury applied the four-pronged test to determine if the proper procedures were followed by the supervisor of a police officer who was accused of being abusive towards a motorist. The jury found that the proper procedures were not followed by the supervisors, and the Superior Court found in favor of the motorist. The Supreme Judicial Court rejected the Commonwealth's defense of immunity and affirmed the verdict.

The CJAM issued the Fiscal Year 2002 Memo in November 2001 which informed Defendant Anderson and the Plaintiff of the immediate need for budgetary cuts. See Complaint Exhibit A. In compliance with that memo, the Plaintiff's office, relying on its

executive power to do so, modified the policy and procedure regarding the frequency and duration of drug testing at the OCC. See Complaint Exhibit B. The CJAM then issued the Trial Court Policy for Drug Court Sessions that notified the drug court session judges that in order to utilize a funding source outside that particular court's appropriation for operational expenses, the court must obtain prior approval from that court's departmental Chief Justice. See Complaint Exhibit C.   After being made aware of the policy and procedure that had been put into place at the directive of the CJAM by the Trial Court and the Plaintiff's office, Defendant Anderson sought to challenge these policies and procedures by continuing to order drug testing which did not adhere to the policy and procedure established through the CJAM's and Plaintiff's statutory authority.  See Complaint Exhibit D.

An administrative meeting was held in January 2002, during which the Office of the Commissioner attempted to accommodate Judge Anderson and made recommendations as to alternative procedures for testing, none of which were met with approval by Defendant Anderson.

During this period the CJAM was notified on several occasions of the problems facing the OCC in connection with court orders by the drug session and the inability of the OCC to comply with the orders as a result of the fiscal cutback.

By letter dated March 15, 2002, the CJAM exercised her statutory authority and directed the Plaintiff to submit any particular issues arising between a Trial Court judge and the OCC or the Commissioner of probation concerning the provision of drug testing services to her for administrative resolution. See Complaint Exhibit J.

By issuing these memos, policies and letters, the CJAM had not only established policies and procedures for drug testing, she was at this point acting administratively in

an attempt to implement the policy established through her statutory authority.

The courts have determined that, "discretionary acts are those characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning". Patrazza v. Commonwealth, 398 Mass. 464, 467 (1986) (holding that the Commonwealth was exempt from liability as the policy of leaving highway guardrail ends unburied was a discretionary function). The CJAM's responsibilities do include policy making and planning, which arguably would be discretionary functions. However, "discretionary acts are not those which involve 'the carrying out of previously established policies or plans'". Id. at 468, quoting Whitney. Once the policy and procedure are established, as here, the CJAM has a mandate to not only implement the policies she has authorized but a duty to act to prevent the foreseeable incarceration of Trial Court personnel, especially where she is aware of and directed budget cuts due to a fiscal crisis. Assuming, arguendo, that the policy making and planning decisions are ones that fall under the protection of discretionary function, the injury producing conduct here (as required by the first prong of the Court's test) was the negligence in the implementation of those policies, which is clearly not protected by the discretionary function exception.

This distinction was specifically addressed by the Court in Whitney v. Worcester, 373 Mass. 208 (1977). See also Onofrio v, Commonwealth, 408 Mass. 605 (1990). In Whitney, a child was injured in an accident at school and case was dismissed on the grounds of municipal immunity. The Plaintiff appealed and the Supreme Judicial Court remanded the matter for trial, pending legislative action with regard to governmental immunity. The Legislature enacted G.L. c. 258, § 10(b), following this court's decision in Whitney, and the Supreme Judicial Court has consistently looked at the principles

enunciated in Whitney to determine the intended scope of this statutory provision.  See A.L. v. Commonwealth, 402 Mass. at 245, Patrazza v. Commonwealth, 398 Mass. 464 (1986);  Irwin v. Ware, Irwin v. Town of Ware, 392 Mass. 745 (1984).

In Whitney, the Court stated that the "appropriate dividing line" for governmental immunity "falls between those functions which rest on the exercise of judgment and discretion and represent planning and policymaking and those functions which involve the implementation and execution of such governmental policy or planning".  Id. at 217.

The Whitney Court goes on to state:  " when the particular conduct claimed to be tortuous involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities and the governmental entity in question held liable for the injuries resulting from such acts." Id. at 218-219.

The Supreme Judicial Court has held that the decision of a state mental health department employee to place a client in an apartment was the "carrying out of previously established policy", and therefore not protected by the discretionary function exception.  Onofrio v. Commonwealth, 408 Mass. 605, at 611 (1990);  (quoting Whitney).

The distinction set forth in Whitney, makes it clear that the implementation of an administrative resolution to a dispute over previously established drug testing policy is not discretionary, as well as the statutory duty imposed on the CJAM to resolve that administrative dispute under M.G.L. c. 211B, § 9.  The procedure for drug testing criminal defendants had been put into place by the Office of the Commissioner of Probation as required and approved by the CJAM.  The CJAM had the authority granted by the Legislature to implement that plan with respect to trial court personnel.  While she

established that duty, , she then failed to exercise reasonable care when she failed to take action to prevent the incarceration of Plaintiff.

The second prong of the Court's test takes into account whether a matter would jeopardize the quality and efficiency of the governmental process. In this case it would not. The Plaintiff was not asking the CJAM to set policy, nor intervene in connection with any individual matter pending before Anderson involving him personally. The Plaintiff merely followed the CJAM's directive to submit the issue to her for administrative resolution. The CJAM initially affirmatively undertook an obligation to address the problem administratively in accordance with her statutory duty under M.G.L. c. 211, § 9. If she had fulfilled her duty, this matter would never have gone as far as the Commissioner of Probation being personally held in contempt and incarcerated by Defendant Anderson.

Third, having a judge or jury review this matter would not usurp the power of the Legislature. In allowing a discretionary function exception to exist, the Legislature was attempting "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort". Pina v. Commonwealth, 400 Mass. 408, 415 (1987) (holding that the determination of social security benefits was a discretionary function). The case at bar is not a situation involving judicial "second guessing" by the Plaintiff. The Legislature had already granted the Commissioner of Probation the executive authority, subject only the approval of the CJAM, to establish the protocol for drug testing of criminal defendants. Actually, Defendant Anderson himself "second guessed" and usurped the power of the legislature when he initiated contempt proceedings to question funding sources for drug testing criminal defendants.

Finally, there is no alternate remedy available to the Plaintiff other than an action for damages.  The Plaintiff was not a party to the criminal cases at issue.  The Plaintiff was doing his job pursuant to the executive power granted to him by statute.  The Plaintiff made several attempts to offer alternative plans for drug testing to Defendant Anderson.  The Plaintiff also made several attempts to follow the directive of the CJAM, so that she could effectuate an administrative resolution to the issues facing the Trial Court. Rather than submit the issues as required by the CJAM for administrative resolution, Defendant Anderson held the Plaintiff personally responsible for the fiscal shortfall of the Commonwealth when the type of drug testing he had ordered was no longer available.  The Plaintiff was fined and incarcerated for allegedly violating a court order to which he was not a party. Here, as in Dobos and Pina, there is "no alternate judicial process … (the plaintiff) cannot be aided by equitable relief;  and absent damages, he can not be compensated for the harm done".  Dobos v. Driscoll, 404 Mass. 634, 653 (1989).  Moreover, Plaintiff continues to have the threat of incarceration held over his head in the event of future lack of funding for other programs.  Therefore, there is no alternative remedy available to the Plaintiff.

The Trial Court had already established the policy and planning decisions regarding drug testing.  The problem became how to provide the testing based on the amount of funding available.  The issue before the parties was clearly one of implementation of an existing policy.  All parties agree that probationers should be tested (established policy) but if the budget of the Trial Court is such that the particular type of testing required by the Defendant was no longer available, it is then up to the CJAM to act administratively to implement the plan to accomplish the testing without any Trial Court personnel spending one minute in jail.  Furthermore, the CJAM had a statutory

duty to administratively resolve this dispute arising from a lack of funding.

IV.   CONCLUSION

Based on the four-pronged test utilized by the Court to determine if governmental immunity applies to a particular matter, clearly, the Trial Court cannot avail itself of the protection of the discretionary function exception to the Mass. Tort Claims Act.

The Commissioner of Probation, cloaked with executive power by the Legislature, has the authority to determine how drug testing will be conducted within the OCC.

The Legislature has determined that it is the responsibility of the CJAM to oversee the implementation of the policies and plans of the trial court. Once these policies and plans are established, this function is not discretionary.

After the Office of the Plaintiff had established an approved policy for drug testing (or any trial court program), and funds appropriated by the Legislature had become unavailable, the CJAM affirmatively undertook a duty to formulate an administrative resolution to the issue of a district court trial judge holding a contempt hearing against the Commissioner of Probation to inquire about the availability (or lack thereof) of funds for a public service. She failed in this duty and the Plaintiff was ultimately held personally responsible and incarcerated.

WHEREFORE, Plaintiff O'Brien requests that this Court deny Defendant Trial Court of Massachusetts' Motion to Dismiss all counts against him.

        Respectfully submitted,

        JOHN J. O'BRIEN,

        By his attorney,

        Paul K. Flavin          /s/
        Paul K. Flavin, Esquire
        BBO# 171145
        John C. Koslowsky, Esquire
        BBO# 561616
        Flavin and Koslowsky
        424 Adams Street
        Milton, MA  02186
        (617) 698-3000

Dated:   September 17, 2004

## CERTIFICATE OF SERVICE

I, Paul K. Flavin, Esquire, hereby certify that on this 17th day of September, 2004, I have caused to be served by First Class Mail, postage prepaid, the foregoing pleading upon Richard Renehan, Esquire, Goulston and Storrs, P.C., 400 Atlantic Avenue, Boston, MA  02110 and J. Owen Todd, Esquire, Todd and Weld LLP, 28 State Street, Boston, MA  02109.

        Paul K. Flavin          /s/
        Paul K. Flavin          /s/

2003-46C